UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
IKEAM D. CUNNINGHAM, :
:
Plaintiff, :
: 18-CV-1743 (JMF)
-v- :
: OPINION AND ORDER
NEW YORK JUNIOR TENNIS LEAGUE, INC., :
:
Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Ikeam D. Cunningham, proceeding without counsel, brings this action against his former employer, the New York Junior Tennis League, Inc. ("NYJTL"), alleging claims of race discrimination, retaliation, hostile work environment, unpaid overtime, and negligence. Liberally construed, Cunningham's Amended Complaint asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York State common law. *See* ECF No. 5 ("Amended Complaint" or "Am. Compl."). NYJTL now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Cunningham's claims. *See* ECF No. 41-10 ("Def.'s Mem."). For the reasons that follow, the motion is denied with respect to the FLSA and NYLL claims, but otherwise granted.

**BACKGROUND**

The relevant facts, taken from the admissible materials submitted by the parties, are either undisputed or described in the light most favorable to Cunningham as the non-moving party. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

In October 2015, Cunningham was hired by William Wiese, a facilities manager for NYJTL, for a part-time maintenance position at NYJTL's facility in the Bronx, New York, known as the Cary Leeds Center for Tennis and Learning ("CLC"). *See* ECF No. 41-8 ("Wiese Aff."), ¶ 3. In February 2017, Wiese, the manager of CLC, and Skip Hartman, a founder of NYJTL, held a meeting with Cunningham and CLC's other maintenance employees, all of whom, including Cunningham, were African American. *See* ECF No. 41-5 ("Pl.'s Dep."), at 13-14, 91-92. Wiese and Hartman informed the employees that CLC had terminated its previous security contract and that they would be taking on responsibility for security in addition to maintenance. *Id.* at 17. Wiese stated that, because the maintenance employees were "from the neighborhood," they could "relate to the community" and should conduct security for CLC. *Id.* at 15, 89. The maintenance employees were promised that, following a probationary period, they would be granted full-time positions, increases in pay, and health benefits. *Id.* at 15-16, 22; *see also* ECF No. 41-1 ("Def.'s SOF"), ¶¶ 7-8.

The employees' new positions as security/maintenance personnel took effect on March 1, 2017. Def.'s SOF ¶ 3. According to Cunningham, NYJTL tampered with his timesheets and did not compensate him for all the overtime he worked in his new hybrid capacity. Pl.'s Dep. at 80-83. In addition, Cunningham asserts that, while he was employed with CLC, NYJTL twice accused him of stealing from the facility. *Id.* at 96-99. First, Cunningham, along with the three other maintenance/security employees, received a group Facebook message from Ingrid

Ramirez, the front desk manager at CLC, "blaming" the employees for "stealing" items that were missing from the refrigerator. *Id.* at 97-98. No reprimand or disciplinary action resulted from this incident. *Id.* at 115-16. Second, two weeks before Cunningham was terminated, Wiese asked Cunningham if he knew anything about money missing from Wiese's locker. *Id.* at 98-99.

On August 23, 2017, Cunningham was scheduled to work the overnight shift, beginning at 10:00 p.m. *Id.* at 39; Wiese Aff. ¶ 4; *see also* ECF No. 41-3 ("Exs. A-C"), at 29, 38. During Cunningham's shift that night, a group of people broke into CLC's clubhouse at approximately 11:08 p.m., damaging and stealing property. Def.'s SOF ¶ 10; Exs. A-C, at 30. Cunningham left the clubhouse building at 10:50 p.m. and was absent at the time of the break-in. Wiese Aff. ¶ 6. According to Cunningham, he observed several people hop over a fence onto CLC's property and left the clubhouse to move a van in the parking lot to avoid further damage and to instruct the people to leave the premises. Pl.'s Dep. at 41, 45-46. After instructing the people to leave, he continued to surveil the group, suspecting them of trying to break into the facility, and then proceeded to clean the tennis courts on the property for several hours. *Id.* at 45-51. At about 2:38 a.m. on August 24, 2017, Cunningham returned to the clubhouse and saw the damage from the break-in, at which time he reported the incident to the police. *Id.* at 58-59; Wiese Aff. ¶ 5. The next day, Wiese terminated Cunningham. Pl.'s Dep. at 64; Wiese Aff. ¶ 11, Ex. C.

In October 2017, Cunningham applied for unemployment benefits with the New York State Department of Labor, Division of Unemployment. Pl.'s Dep. at 70-71. The Department denied Cunningham's application, ruling that he had been terminated "for misconduct." *Id.* at 72. On appeal, Administrative Law Judge ("ALJ") Wendy Pichardo upheld the decision, finding that Cunningham was ineligible for benefits because he lost his employment through misconduct. *See* ECF No. 41-4 ("Exs. D-G"), at 29. ALJ Pichardo held two hearings before

issuing her decision. Cunningham was present at the first hearing and provided a statement on the record in support of his case. Pl.'s Dep. at 74-75; Exs. A-C, at 36-59. After Cunningham's testimony, ALJ Pichardo adjourned the hearing and scheduled a second hearing to gather more information. Pl.'s Dep. at 77; Exs. A-C, at 50, 59. Cunningham did not appear at the second hearing. Pl.'s Dep. at 77. In her decision, ALJ Pichardo found Cunningham's account of his activities during his absence from the clubhouse "not credible," both because he was not responsible for cleaning the tennis courts during his shift and because there was not enough gas in the leaf blower (which had just been repaired) to be used to clean the courts. Exs. D-G at 29. She ultimately found that Cunningham had been "discharged because he was not at work as required when the break in occurred and had not reported his absence from the premises to his supervisor that day." *Id.*

## LEGAL STANDARDS

Summary judgment is appropriate when the admissible evidence in the record demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over an issue of material fact qualifies as "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence" in support of its position, *id.* at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and a court must "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

When a summary judgment motion is brought against a *pro se* litigant, as here, the Court must provide the *pro se* party with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). That special solicitude is not unlimited, however, and it does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). That is, a *pro se* plaintiff opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

## DISCUSSION

Cunningham's Amended Complaint, liberally construed, alleges claims of discrimination, retaliation, and hostile work environment under Title VII, Section 1981, the NYSHRL, and the NYCHRL; unpaid wages under the FLSA and NYLL; and negligence under New York common law. NYJTL's moves for summary judgment on all claims.

**A. Discrimination Claims**

The Court turns, first, to Cunningham's discrimination claims. Discrimination claims brought under Title VII, Section 1981, the NYSHRL, and the NYCHRL are subject to the three-step burden-shifting analysis adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 65-66 (S.D.N.Y.

2016).[1] Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. See 411 U.S. at 802. To establish a *prima facie* case under all statutes except the NYCHRL, a plaintiff must show that: (1) he was a member of a protected class; (2) he was competent to perform the job in question or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *See, e.g.*, *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014). The showing required for NYCHRL claims differs slightly, as the adverse action need not be "material"; instead, a plaintiff need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 172-73 (S.D.N.Y. 2011). A NYCHRL plaintiff, however, must still adduce evidence supporting an inference of discrimination. *Id.* at 177.

If the plaintiff makes out a *prima facie* case, "the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks omitted). If the defendant does so, the plaintiff "may no longer rely on the presumption raised by the prima facie case," but rather must put forward evidence that would allow a reasonable jury to conclude that "the employer's determination was in fact the result of racial discrimination." *Id.* "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion

---

[1] Strictly speaking, it is "unclear whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Nevertheless, courts in this Circuit "[t]ypically . . . apply the liberal standards of the NYCHRL to the basic *McDonnell Douglas* framework." *Jeune*, 2014 WL 83851, at *4 (alterations and internal quotation marks omitted).

for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). That is, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted). Courts evaluating a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff*, 196 F.3d at 448. "[A]n inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Id.* (internal quotation marks and alteration omitted).

Applying these standards here, the Court has no trouble concluding that Cunningham's claims fall short. First, Cunningham fails to show that his termination occurred under circumstances that give rise to an inference of discrimination, a necessary element of his *prima facie* case. In his Amended Complaint and at his deposition, Cunningham recounts a single statement, allegedly made by Wiese months before Cunningham's termination, to the effect that Cunningham and the other maintenance employees were from the neighborhood and therefore could relate to the community. Am. Compl. 6; Pl.'s Dep. at 13, 90, 115. By itself, however, that alleged comment — by the same person who had hired Cunningham in the first place — does not support an inference of discrimination. *See, e.g.*, *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire."). And, more to the point, the statement does not

7

support an inference that the *adverse employment action* at issue — namely, Cunningham's termination — was motivated by discrimination, since the statement was made months earlier. *See, e.g.*, *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also Galimore v. City Univ. of N.Y. Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009) (listing, among the relevant factors for determining whether a statement demonstrates a discriminatory intent, (1) when the remark was made in relation to the employment decision at issue; (2) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (3) the context in which the remark was made, i.e., whether it was related to the decision-making process).

In his opposition to NYJTL's motion for summary judgment, Cunningham claims that, on the very day of his termination, Wiese stated that since Cunningham "was familiar with the neighborhood," "things like this should not happen with . . . [A]frican[-]American maintenance workers." ECF No. 46 ("Opp'n"), at 2. But — putting aside the question of whether that statement, if made, would be sufficient to establish a *prima facie* case — there is no admissible evidence to support the claim. Cunningham did not allege it in his Amended Complaint or mention it in his deposition. To the contrary, when asked at his deposition whether anyone had ever made a "derogatory," "discriminatory," or "racially motivated" comment to him (aside from Wiese's comments months earlier), Cunningham testified "[n]o." Pl.'s Dep. 114-15. Given that deposition testimony, Cunningham cannot defeat summary judgment with his belated and unsworn allegation about a statement made by Wiese on the day of his termination. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (per curiam) (explaining that

the "sham issue of fact doctrine . . . prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony"); *see also Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452 (GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").

In any event, even if Cunningham did successfully establish a *prima facie* case, his claims would fail at the third step of the *McDonnell Douglas* analysis, as he offers no evidence that NYJTL's non-discriminatory reasons for his termination — namely, that he abandoned his post without permission when a group of people broke into the clubhouse and then failed to timely report the break-in — are a pretext for discrimination. In fact, Cunningham is arguably collaterally estopped from even disputing NYJTL's stated reasons for his termination based on ALJ Pichardo's factual finding, following an evidentiary hearing at which Cunningham testified, that he was "discharged because he was not at work as required when the break in occurred and had not reported his absence from the premises to his supervisor that day." Exs. D-G, at 29; *see, e.g.*, *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966) (noting that collateral estoppel may apply when an administrative agency is "acting in a judicial capacity and resolve[s] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate"). At a minimum, NYJTL's stated reasons certainly satisfy its burden "to articulate some legitimate, non-discriminatory reason for its action." *Holcomb*, 521 F.3d at 138 (internal quotation marks omitted). And Cunningham does not come close to producing "sufficient evidence to support a rational finding" that NYJTL's stated reasons "were false, and that more likely than not [discrimination] was the real reason for [his termination]." *Weinstock*,

224 F.3d at 42; *see, e.g.*, *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 125 (2d Cir. 2008) ("[W]here there is overwhelming evidence that the employer had a legitimate reason to dismiss an employee, the employee must present more than few isolated pieces of contrary evidence to survive summary judgment.").

In short, Cunningham's discrimination claims must be and are dismissed.[2]

## B. Retaliation Claims

Cunningham's retaliation claims under Title VII, Section 1981, the NYSHRL and the NYCHRL are also governed by the *McDonnell Douglas* framework. *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 315 (2d Cir. 2015); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361 (S.D.N.Y. Aug. 16, 2012). To make out a *prima facie* case of retaliation, Cunningham must prove that he engaged in "protected activity" — that is, that he took some action to protest or oppose statutorily prohibited discrimination. *See, e.g.*, *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999); *accord Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 & n.11 (2004). Cunningham fails to do so. In fact, during his deposition, he conceded that he never complained to anyone at NYJTL about discrimination — a concession that is fatal to his retaliation claims. Pl.'s Dep. at 114-115, 117. To be sure, in his opposition to NYJTL's summary judgment motion, Cunningham contradicts that admission, claiming that he met with

---

[2] It is not clear if Cunningham means to claim that Ingrid Ramirez's messages to the maintenance employees, including Cunningham, regarding theft from the clubhouse refrigerator and Wiese's inquiry about money missing from a locker, on their own, constituted discrimination. If he does, those claims would also fail for the reasons discussed above, and because Ramirez's and Wiese's alleged inquiries did not constitute "adverse employment action," even under the more lenient standards of the NYCHRL. *See, e.g.*, *Jeune*, 2014 WL 83851, at *4 (holding that an adverse employment action claim under Title VII, Section 1981, and the NYSHRL must materially alter the terms and conditions of the plaintiff's employment, and a claim under the NYCHRL requires a showing of "differential treatment" that is "more than trivial, insubstantial, or petty").

Wiese three weeks before his termination and complained that his then-recent assignments and increased workload were due to his race. *See* Opp'n 2. But that unsworn assertion is entirely unsupported by admissible evidence and, as noted, need not be credited or considered. *See Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009). It follows that Cunningham's retaliation claims fail and must be dismissed.

**C.  Hostile Work Environment Claims**

To prevail on a hostile work environment claim under Title VII, Section 1981, or the NYSHRL, a plaintiff must show that his or her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (internal quotation marks omitted); *see Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 596, 609 (2d Cir. 2006). "[C]ourts must distinguish between merely offensive or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions of employment," *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) (internal quotation marks omitted), based on factors like "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The standard for prevailing on a hostile work environment claim is lower under the NYCHRL. "The NYCHRL imposes liability for harassing conduct that does not qualify as 'severe or pervasive.'" *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (N.Y. App. Div. 2009). Instead, to survive a motion for summary judgment under the NYCHRL, a plaintiff must simply demonstrate "the existence of unwanted [race]-based conduct." *Id.*

"Nonetheless, even under the NYCHRL, petty, slight, or trivial inconvenience[s] are not actionable." *Id.* (internal quotation marks omitted).

Measured against these standards, Cunningham's hostile work environment claims fall short. In particular, Cunningham fails to allege, let alone prove, behavior "so extraordinarily severe . . . to have altered the conditions of [his] working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85. Once again, Cunningham alleges only a single statement by Wiese that is even arguably based on his race — namely, his statement about the maintenance workers being able to "relate to the neighborhood" because they were "from the neighborhood." Am. Compl. 6; *see* Pl.'s Dep. at 13, 90, 115. That "[i]solated" comment by the person who hired Cunningham was not "extraordinarily severe" and therefore "do[es] not meet the threshold of severity or pervasiveness" for a claim of hostile work environment under federal or state law. *See Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (holding that a supervisor's racist remarks, although "despicable and offensive," "fail[ed] to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"). The effect of Wiese's alleged comment on the work environment was not even severe enough to support a claim under the NYCHRL. *See, e.g.*, *Fullwood v. Ass'n for the Help of Retarded Children, Inc.*, No. 08-CV-6739 (DAB), 2010 WL 3910429, at *9 (S.D.N.Y. Sept. 28, 2010). Thus, Cunningham's hostile work environment claims must be and are dismissed.[3]

---

[3] In light of the foregoing, the Court need and does not address NYJTL's argument pursuant to *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). *See* Def.'s Mem. 13-16.

12

### D. Negligence

Next, Cunningham purports to bring a negligence claim against NYJTL. To establish a negligence claim under New York law, however, Cunningham must plead and prove the existence of a duty, a breach of that duty by NYJTL, and that the breach proximately caused Cunningham to suffer harm. *See, e.g.*, *Baptiste v. N.Y.C. Transit Auth.*, 28 A.D.3d 385, 386 (N.Y. App. Div. 2006). He does not come close to satisfying these requirements. The Amended Complaint merely alleges, in conclusory fashion, that "[t]he negligence of management, General Manager Bill [Wiese] and CEO Skip Hartman, led to the termination of my employment." Am. Compl. 6. Moreover, even if that sufficed to state a claim — and it does not — Cunningham points to no evidence whatsoever in support of the claim. Accordingly, NYJTL's motion is granted as to Cunningham's negligence claim, as well.

### E. FLSA and NYLL Claims

That leaves only Cunningham's claims under the FLSA and NYLL. As a general matter, the FLSA and NYLL require employers to pay overtime at an hourly wage rate of one and half times the regular rate to employees who work in excess of forty hours per workweek. *See* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see also Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78 (2d Cir. 2003). In an effort to demonstrate compliance with that requirement, NYJTL submits time sheets and earnings statements corresponding to Cunningham's compensation while employed at CLC. *See* ECF No. 41-7 ("Ramirez Aff."), at 4-96.[4] Far from demonstrating that Cunningham's claims are meritless, however, these documents

---

[4] Cunningham submits versions of what appear to be some of the same documents, albeit with handwritten notations that do not appear on NYJTL's versions. *See* ECF No. 47 at 16-24. The Court need not address these discrepancies for purposes of this Opinion, as they do not affect the Court's conclusions.

13

appear to show that Cunningham did not receive overtime compensation for all two-week pay periods in which he worked more than eighty hours. *See*, *e.g.*, Ramirez Aff. at 65, 67, 71, 85, 87, 90, 92, 94-95. For the two-week pay period ending May 15, 2016, for example, the time sheet reflects that Cunningham worked ninety-nine and one-half hours — or, at least, nineteen and a half overtime hours. *Id.* at 11, 65. According to the earnings statement for that period, however, he did not receive any overtime pay for that period. *Id.* at 65. On top of that, the records submitted by NYJTL also contradict its claim that "Mr. Cunningham never worked more hours than his shift, which [was] 10:00 p.m. until 7:00 a.m." ECF No. 41-2 ("Cohen Aff."), at ¶ 20. For instance, there appear to be multiple dates on which Cunningham worked more hours than the nine-hour shift for which he may have been scheduled, including, but not limited to, January 16, 2016, January 28, 2016, February 12, 2016, March 2-4, 2016, and March 16, 2016. *See e.g. id.* at 4-5, 7-8. These constitute genuine disputes of material fact.

Accordingly, NYJTL's motion for summary judgment is denied with respect to Cunningham's claims under the FLSA and NYLL.

## CONCLUSION

For the reasons stated above, NYJTL's motion for summary judgment is GRANTED except as to Cunningham's claims under the FLSA and NYLL.[5] Because Cunningham's damages under the FLSA and NYLL, if any, are likely to be both small and easily quantifiable, the Court is inclined to believe that the parties can and should be able to settle these remaining claims. To that end, the Court will, by separate Order, refer this matter to the Magistrate Judge Fox, the assigned Magistrate Judge, for settlement purposes. **Within one week of the date of**

---

[5] Cunningham also asserts, in cursory fashion, a claim for breach of contract. *See* ECF No. 5, at 5. Because he fails to address it in his opposition, much less support it with admissible evidence, summary judgment on that claim is also granted to NYJTL.

**this Opinion and Order**, the parties shall contact the Chambers of Magistrate Judge Fox to schedule a settlement conference as soon as practicable. No later than **April 27, 2020**, NYJTL shall submit a status letter to the Court, after which the Court will provide further guidance on next steps in the event that the matter has not settled.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate ECF No. 41 and to mail a copy of this Opinion and Order to Cunningham.

SO ORDERED.

Dated: February 26, 2020
   New York, New York

_____
JESSE M. FURMAN
United States District Judge